Case No. 23-SW-00439-LMC

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR SEARCH WARRANT

I, Chloe Crowdes, a detective with the Jackson County Drug Task Force (JCDTF), being duly sworn, hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a police officer with the Lee's Summit Police Department and have been a law enforcement officer since 2016. I am currently assigned as a detective with the Jackson County Drug Task Force (JCDTF) and have served in that capacity since July of 2022. While assigned to the JCDTF, I have participated in numerous illegal drug/narcotics and weapons related investigations. My training and experience has involved wire and electronic surveillance, physical surveillance, search warrant executions, arrests of numerous drug traffickers, and the handling of cooperating sources and sources of information.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. I submit this affidavit for the limited purpose of establishing probable cause to search a black Samsung cell phone, IMEI: 352945782120273 ("**Target Device 1**"). As set out herein, I have probable cause to believe that evidence related to the distribution of controlled substances, in violation of 21 U.S.C. § 841, is located within the **Target Device**.

## ITEMS TO BE SEARCHED AND EVIDENCE TO BE SEIZED

4. This affidavit is in support of a search warrant for the search of **Target Telephone 1**, which is currently secured as evidence in the Western District of Missouri.

5. The property to be seized from **Target Telephone 1** is electronic data contained within the phone relating to the manufacture, distribution, or dispensing, or possession with the intent to manufacture, distribute or dispense, a controlled substance. Such drug trafficking/drug distribution-related information shall include: call logs of incoming, outgoing, missed, saved or stored calls; saved directories of names, physical addresses and telephone/pager/fax numbers; email addresses as well as emails drafted, stored, sent and/or received; received, sent, stored and/or deleted messages in textual or voice; text, SMS, MMS and EMS messages received, sent, stored, drafted and/or deleted; audio, photographs and movie data that were device created or not, but received, stored, viewed, transmitted or deleted; memos in a textual or voice format, be they stored, deleted, sent, received and/or drafted; data/information to include, but not limited to, internet activity, stored calendar data, applications (or "apps"), and application username and passwords; stored, received, device-created, transmitted, and/or deleted GPS data; and evidence of user attribution showing the ownership and identifying the user, or location of the user of the device at the time things in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

## PROBABLE CAUSE

4. On August 15, 2023, I received information from a confidential informant ("CI") regarding the sale of controlled substances, specifically methamphetamine and fentanyl, by Scot A. Vince in Room 312 of an Extended Stay America Hotel, located at 4535 Main Street, Kansas City, Missouri 64111. The CI also advised that they know Vince to have firearms in the hotel room. A records-check of Vince's criminal history confirmed him to be a convicted felon.

5. On August 16, 2023, the CI was in contact with Vince regarding the controlled purchase of methamphetamine and fentanyl. The CI contacted Vince and inquired about JCDTF Undercover Officer 202 ("UC 202") responding to Room 312 of the hotel to purchase the methamphetamine and fentanyl. Vince agreed to meet the UC 202. The UC 202 arrived at the hotel at 1525 hours and met with Vince in the parking lot. The UC 202 was able to positively identify Vince from a MULES photograph. Vince escorted the UC 202 up to his room, and the UC 202 was able to confirm that Vince's room was marked "312". While inside the room, the UC 202 observed a large amount of methamphetamine and several grams of powder fentanyl. The UC 202 asked Vince for an ounce of powder fentanyl, to which Vince advised he did not have the full ounce. Vince then told the UC 202 that he needed time to "order and go get it." Vince then advised he would need time to "call his guy" to see if they could go pick up the fentanyl. Vince then placed a phone call on a black cell phone (**Target Device 1**) and makes contact with an unknown subject whom Vince refers to as "boss." Video of the controlled purchase shows the cell phone utilized by Vince to make the phone call, which appears to be a black cell phone with a four-lens camera. Thereafter, the UC 202 purchased two ounces of methamphetamine and 3 grams of powder fentanyl from Vince with pre-recorded Jackson County Drug Task Force funds.

6. Following the controlled purchase, I applied for and received a search warrant from the Circuit Court of Jackson County, Missouri, for Room 312 of the Extended Stay America Hotel, located at 4535 Main Street, Kansas City, Missouri 64111. The search warrant was issued by the Honorable Judge Bird-Riley at 1810 hours, and the Kansas City, Missouri Police Department Tactical Response Team 60 executed the warrant on the hotel room at approximately 2100 hours on August 16, 2023. Vince and an adult female, identified S. N., were taken into custody at the

time of execution. A subsequent search of the hotel room as conducted, and the following items were located:

   a. Glock, model 43, 9mm handgun (serial number BFBZ505) in a black "in the waistband" holster, which was loaded with one bullet in the chamber and 6 bullets in the magazine. The firearm was located under the mattress on the south side of the bed. It should be noted that the south side of the bed had masculine products on the nightstand and the north side of the bed had feminine products beside it to include a bag with S. N.'s Missouri ID inside.
   b. Black safe from the top dresser drawer containing three bags of a crystal substance, 2 bags of marijuana, assorted pills, plastic baggies with powder residue, suboxone, 1 9mm bullet, a $100 bill and a $2 bill, and rubber containers with white powder residue.
   c. 3 boxes of plastic bags and 3 scales with residue were recovered from the same dresser drawer where the safe was located.
   d. A black tablet and a black Samsung cell phone, IMEI: 352945782120273 (**Target Device 1**) were located on the bed stand on the south side of the bed. $14 in $1 bills were also located in the bed stand on the south side of the bed.
   e. Plastic bag with a large amount of crystal substance from a black backpack located against the bed near the south side of the bed.
   f. Notebook from the bed stand on the south side of the bed with apparent debts and names listed out.

7. Members of the Kansas City, Missouri Police Department Tactical Response Team also advised that when they took Vince into custody, he had a bag with a large sum of United States Currency on his person. The bag was recovered as well. The Independence, Missouri Police Department responded to the location and took Vince and S. N. into custody. They were both transported to the Independence, Missouri Police Department detention facility.

8. After arriving back at the Jackson County Drug Task Force headquarters, the following items were weighed/tested:

   a. Plastic baggie containing a crystal substance recovered from the safe, weighed at 19.8 grams and tested as methamphetamine with the TruNarc device.

- b. Plastic baggie containing a crystal substance recovered from the safe, weighed at 31.1 grams and tested as methamphetamine with the TruNarc device.
- c. Plastic baggie containing a crystal substance recovered from the safe, weighed at 41 grams and tested as methamphetamine with the TruNarc device.
- d. Plastic baggie containing a crystal substance recovered from the black backpack, weighed at 489.6 grams and tested as methamphetamine with TruNarc device.

9. The United States Currency recovered was also counted utilizing a money counter, which totaled $10,466. The $100 bill removed from the safe was deemed as counterfeit. A records-check of the firearm revealed that the firearm was reported stolen out of Independence, Missouri.

10. I also weighed and tested the crystal substance and white powder substance purchased from Vince during the controlled purchase, using the TruNarc device. Both plastic baggies containing a crystal substance each weighed 28.7 grams and both bags tested positive for methamphetamine. The plastic bag containing the white powder substance weighed 3.8 grams and tested positive for fentanyl.

11. Investigators conducted an interview with S. N. Prior to the interview, S. N. was advised of her Miranda Rights, which she said she understood. Thereafter, S. N. agreed to speak with officers. During the interview, S. N. made the following statements:

- a. S. N. been staying at the hotel with Vince for 4 days.
- b. S. N. said that if you're looking at the bed, her belongings are on the left by the window and Vince's belongings are on the right.
- c. Vince has conducted approximately 10 drug transactions in the hotel room while she was present.
- d. Vince acquired a "burrito" sized package of methamphetamine several days ago from a black male. The methamphetamine was in a black Adidas backpack by his side of the bed. The same black male has delivered Vince fentanyl to the hotel room twice while S. N. was present. S. N. believes Vince has had approximately 2 pounds of methamphetamine over the past 4 to 5 days.

    e.     Vince has a black handgun that he keeps under his pillow or in his waistband. He has had the handgun for at least 3 weeks. She believes the handgun is a 9mm handgun. She does not know where he got the firearm.

    f.     Vince informed S. N. yesterday at approximately three to four in the afternoon after she woke up (August 16, 2023) that Vince believed he had just sold drugs to an undercover officer. Vince removed his handgun from his waistband and placed it under his pillow when informing S. N. of the suspected drug transaction with the undercover officer.

    g.     S. N. observed Vince regularly puts his firearm in his waistband prior to letting people into the hotel room for drug transactions, she believed Vince wore the handgun 100% of the time during drug transactions, and if he did not it, was close to it.

    h.     S. N. does not have access to the safe in the room. S. N. advised it was **Vince's** personal safe.

12.     I know through my training and experience, that drug traffickers commonly carry cellular phones to communicate with friends/family, customers, and source of supplies for their controlled substances. I also know that individuals who deal in illegal controlled substances commonly maintain addresses or telephone numbers in mobile telephones, utilizing the internal mobile phone electronic storage, which reflect names, addresses and/or telephone numbers for their associates, to include sources of supply, distributors, and customers, in their criminal organizations. In addition to continuing their illegal businesses, I know that these individuals utilize mobile telephone systems to maintain contact with their criminal associates. In addition, most mobile telephones on the market today have built in electronic digital cameras and video capabilities. I know that individuals who deal in illegal controlled substances take, or cause to be taken, photographs or videos of themselves, their associates, their properties, their illegal products, and the cash proceeds from these illegal transactions. These individuals usually maintain these photographs and videos in the internal electronic storage of the mobile telephone.

## AUTHORIZATION REQUEST

13. Based on the foregoing, there is probable cause to believe that evidence, fruits, instrumentalities, and contraband described herein will be located in the data stored on **Target Device 1**. Specifically, I believe that executing a search warrant on the **Target Device** will yield the discovery of text and multimedia messages, photographs, videos, voicemail recordings, call logs, contact information, and online account information that will constitute evidence of the distribution of controlled substances in the Western District of Missouri and elsewhere.

FURTHER AFFIANT SAYETH NAUGHT.

DET CROWDES 216
CHLOE CROWDES
Detective
Jackson County Drug Task Force

Subscribed and sworn to before me on

this 31st day of August 2023.   Sworn to by telephone
5:25 PM, Aug 31, 2023

HONORABLE LAJUANA M. COUNTS
United States Magistrate Judge
Western District of Missouri

